UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA COOK,

    Plaintiff,

v.

AVON PROTECTION SYSTEMS, INC.,

    Defendant.
_____/

Case No. 1:11-cv-893

HON. JANET T. NEFF

## **OPINION**

Plaintiff Rhonda Cook, a former employee of Defendant Avon Protection Systems, Inc., filed this action under the Family and Medical Leave Act of 1993 ("FMLA" or "the Act"), 29 U.S.C. § 2601 *et seq*. Pending before the Court is Defendant's Motion for Summary Judgment pursuant to FED. R. CIV. P. 56 (Dkt 37). Plaintiff filed a response (Dkt 38), and Defendant filed a reply (Dkt 45). Having conducted a Pre-Motion Conference in this matter and having now fully considered the parties' written briefs, stipulated statements of fact and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court concludes that Defendant's motion is properly denied.

### **I. BACKGROUND**

On or about June 26, 2006, Defendant, which manufactures respiratory protection products, hired Plaintiff as a production worker (SMF[1] ¶ 1; Dkt 1-2, Compl. ¶ 5). In 2011, Plaintiff worked

---

[1] Defendant's Statement of Material Facts (Dkt 39-1), Plaintiff's Response to Defendant's Statement of Material Facts (Dkt 38-1).

third shift (3:00 p.m. to 11:00 p.m.), Monday through Friday (SMF ¶¶ 2-3). At all relevant times during this case, Defendant had an FMLA policy that it provided to all employees and posted on its company bulletin boards (*id.* ¶¶ 4, 11-12). The policy notified employees of their FMLA rights and allowed employees to take up to twelve workweeks (60 work days) of FMLA leave in any 12-month period (*id.* ¶ 5).

Defendant measured the FMLA twelve-month period on a rolling backward basis (SMF ¶ 6). Specifically, the policy provided the following:

> **3.9** An eligible employee can take up to 12 weeks of leave under this policy during any 12 month period. The Company will measure the twelve month period as a rolling 12 month period measured backward from the date an employee uses any leave under this policy. Each time an employee takes leave, the Company will computer [sic] the amount of leave taken under this policy and subtract it from the 12 weeks available leave. The balance remaining is the amount the employee is entitled to take at that time.

(*id.* ¶ 7). Regarding FMLA leave for a newborn child, Defendant's policy provided the following:

> **7.3** Leave to care for a newborn child or newly placed child may only be taken continuously, unless the employer and employee agree otherwise. Leave for birth, adoption or foster care of a child must be taken within one year of the birth or placement of the child. Employees eligible for salary continuance will receive said continuance only for the period of time in which they are certified by a doctor to be on leave for medical reasons.

(*id.* ¶ 8).

Defendant also had a "no-fault absenteeism policy," which governed employee absences and delineated the consequences for excessive absences (SMF ¶ 13). The absenteeism policy described what types of absences were considered excused and what absences were considered unexcused and subject to progressive discipline (*id.* ¶ 14). An FMLA qualifying event was considered an "excused absence" and not subject to discipline (*id.* ¶ 15). Absences that were due to sickness ("with or

2

without Dr. note—non-qualifying event") or "day care concerns" were among the absences Defendant's absenteeism policy defined as "unexcused absences" subject to progressive discipline (*id.* ¶ 16).

The progressive discipline for unexcused absences under Defendant's absenteeism policy was as follows:

> Avon will allow six (6) no fault points under its system. Points will be given for occurrences which result from an employee being absent for all or part of their work hours. Employees missing time from 1 minute to 3.9 hours will be given .5 points. Employees missing time 4.0 hours or greater will be given 1 points.
>
> The points will be considered on a rolling 12 month period. Employees that exceed the 6 points will receive counseling steps as follows:
>
> > 7 points —verbal warning
> >
> > 8 points —written warning
> >
> > 9 points —3 day suspension without pay
> >
> > 10 points —termination

(SMF ¶ 17). Plaintiff admits that she was aware of and familiar with both the absenteeism policy and the FMLA policy (*id.* ¶ 18). Indeed, she also admits that during the course of her employment, she was disciplined on numerous occasions for unexcused absences pursuant to the absenteeism policy (*id.* ¶¶ 31-44).

Defendant contends that as of April 19, 2010, after taking leave for pregnancy complications and the birth of her daughter, Plaintiff had exhausted her 12 workweeks (60 workdays) of FMLA leave for that time period, an assertion Plaintiff disputes (SMF ¶¶ 22-24). According to Plaintiff, "[i]t is not clear from the record that the leaves listed by defendant are properly chargeable as FMLA

leave as there are no documents reflecting that all of this leave was properly designated as required by the Act" (*id.* ¶ 24).

On January 25, 2011, Plaintiff's supervisor, Harold Anderson, provided Plaintiff with a 3-day suspension due to Plaintiff's accumulation of 9 points under its absenteeism policy (SMF ¶ 40). Plaintiff was to work the rest of the day on January 25, 2011 and begin her suspension on January 26, 2011 (*id.* ¶ 41). That same day,[2] Anderson also informed Plaintiff that if she incurred any additional unexcused absences under the absenteeism policy, then her employment would be terminated (*id.* ¶ 42).

After receiving a telephone call from her daycare provider that her daughter was sick, Plaintiff left work early (SMF ¶ 43). Specifically, Plaintiff left work on January 25, 2011 at 6:00 p.m.—five hours before her shift ended (*id.* ¶ 44). The daycare provider informed Plaintiff that her daughter was throwing up and had diarrhea and that she would have to be picked up (*id.* ¶ 46). Plaintiff contends that "she did not believe leaving work on January 25, 2011 would result in a violation of the attendance policy as she believed it [would] be covered by FMLA" (*id.* ¶ 47).

On January 26, 2011, Plaintiff took her daughter to her pediatrician's office, where she was seen by a pediatric nurse practitioner (SMF ¶ 51). Plaintiff states that her daughter was diagnosed with "gastroenteritis" whereas Defendant indicates that Plaintiff's daughter was diagnosed with "the flu" (*id.* ¶ 52). The pediatric nurse practitioner who examined Plaintiff's daughter advised Plaintiff to slowly advance her daughter's diet, to monitor her daughter's fluid intake and stools, and to anticipate that the illness would last three to five days (Df. Ex. L, Blackmer Dep. at 35-36). The

---

[2]The parties identify the date as January 25, 2010, but the context of the surrounding stipulated facts indicate that the year would be correctly identified as 2011.

pediatric nurse practitioner also advised Plaintiff to go to the emergency room if the baby had persistent diarrhea stools and vomiting and became progressively more lethargic (*id.* at 36). The pediatric nurse practitioner observed that Plaintiff's 18-pound daughter was "a pretty petite little girl [with] a much more narrow window for more significant dehydration" (*id.* at 37). According to the pediatric nurse practitioner, dehydration resulting from gastroenteritis is a leading cause of hospital admission for babies and young children (*id.* at 36). Plaintiff's daughter was not prescribed any medication, nor was she subsequently admitted to the hospital or any other inpatient care facility (SMF ¶¶ 53-54).

On February 4, 2011, Defendant terminated Plaintiff's employment, allegedly informing Plaintiff that her daughter's flu was not a serious health condition covered under the FMLA and that her employment was therefore being terminated in accordance with its absenteeism policy (SMF ¶¶ 63-64). In contrast, Plaintiff contends that Defendant informed her that she was being terminated "because her pediatrician's office refused to return the medical certification forms to support her requested leave" (*id.* ¶ 63).

In July 2011, Plaintiff filed this suit against Defendant in state court, claiming that Defendant's actions violated the FMLA. On August 23, 2011, Defendant removed the case to this Court, citing this Court's federal-question jurisdiction, 28 U.S.C. § 1331 (Dkt 1, Notice of Removal ¶ 2). Following discovery, this Court conducted a Pre-Motion Conference in June 2012, permitting the parties to brief Defendant's proposed dispositive motion. The parties filed their motion papers in September 2012 (Dkts 37-47). Having been recently informed that Voluntary Facilitative Mediation in this case was unsuccessful (Dkt 49), the Court now issues this decision on Defendant's pending motion.

## II.  ANALYSIS

**A.   Motion Standard**

A motion for summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**B.   Discussion**

The FMLA prohibits qualifying employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). Among these statutory rights is the right of an eligible employee to take up to 12 weeks of leave "[b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. §§ 2612(a)(1)(A). The FMLA "accommodates the important societal interest in assisting families by establishing minimum labor standard [s] for leave." *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003) (quoting H.R. Rep. No. 103–8(I), 103d Cong., 1st Sess.1993, at *21).

The Sixth Circuit Court of Appeals has identified two distinct theories of recovery available under the FMLA: the interference theory, pursuant to 29 U.S.C. § 2615(a)(1), and the retaliation theory, pursuant to 29 U.S.C. § 2615(a)(2). *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)). The employee must

establish the elements of interference or retaliation by a preponderance of the evidence. *Id.* at 447 (citing *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 335 (6th Cir. 2005)).

To prevail under an interference theory, an employee must establish the following:

1. the employee is an eligible employee as defined by 29 U.S.C. § 2611(2);

2. the employer is an eligible employer as defined by 29 U.S.C. § 2611(4);

3. the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1);

4. the employee gave the employer notice of her intention to take FMLA leave, 29 U.S.C. § 2612(e)(1); and

5. the employer denied the employee FMLA benefits to which she was entitled.

*Wysong*, 503 F.3d at 447 (citing *Cavin*, 346 F.3d at 719).

To prevail under a retaliation theory, the employee must show that the employer discharged or otherwise discriminated against her for exercising FMLA rights or opposing any practice made unlawful by the FMLA. *Arban v. West Pub. Corp.*, 345 F.3d 390, 400-01 (6th Cir. 2003). FMLA retaliation claims founded upon circumstantial evidence are adjudged in accordance with the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Clark v. Walgreen Co.*, 424 F. App'x 467, 472-73 (6th Cir. 2011). Specifically, a plaintiff makes a prima facie case of retaliation by showing that

1. the employee availed herself of a protected right under the FMLA by notifying the employer of her intent to take leave,

2. the employee suffered an adverse employment action, and

3. there was a causal connection between the exercise of rights under the FMLA and the adverse employment action.

*See Edgar*, 443 F.3d at 508 (citing *Skrjanc*, 272 F.3d at 314 (setting forth this framework); and *Rodriguez v. Ford Motor Co.*, 382 F. Supp. 2d 928, 933 (E.D. Mich. 2005) (applying this test to a retaliatory-discharge claim under the FMLA)). If the employee satisfies these three requirements, then the burden shifts to the employer to proffer a legitimate, nondiscriminatory rationale for discharging the employee. *Id.* (citing *Skrjanc*, 272 F.3d at 315).

Plaintiff's allegations in this case fit within both theories of recovery. Plaintiff argues that Defendant interfered with her FMLA rights by discharging her from her position and that Defendant terminated her employment in retaliation for taking FMLA leave (Dkt 38 at 11-12). Defendant does not dispute Plaintiff's allegation that at all material times, Defendant had more than fifty employees and was, as such, a "covered employer" pursuant to the Act, 29 U.S.C. § 2611(4) (Dkt 1-2, Compl. ¶ 7). Nor does Defendant dispute Plaintiff's allegation that she had been employed by Defendant for a period exceeding twelve months and had worked in excess of 1,250 hours during the 12-month period preceding her discharge and is, as such, a "covered employee" pursuant to the Act, 29 U.S.C. § 2611(2) (*id.* ¶ 8). Defendant's motion at bar is instead focused on challenging whether Plaintiff had a right under the FMLA to take protected leave on January 25, 2011, which is an aspect of Plaintiff's requisite proofs under either theory. Defendant proffers two arguments, neither of which demonstrate that it is entitled to judgment as a matter of law.

First, Defendant argues that based on its calculations, Plaintiff had no FMLA leave time available to her as of January 25, 2011. Defendant provides the following calculations:

| DATE | FMLA REASON | FMLA TIME |
|---|---|---|
| 01-25-10 | pregnancy complications | 1 day |
| 01-28-10 | pregnancy complications | 1 day |
| 01-29-10 | pregnancy complications | 1 day |
| 02-01-10 until 04-16-10 | pregnancy complications, birth of child | 55 days |

| | | |
|---|---|---|
| 11-30-10 | Earache | 1 day |
| 12-01-10 | Earache | 1 day |
| | | _____ |
| | | 60 days used |

(Dkt 39 at 19-20).

Plaintiff responds that under Defendant's rolling-calendar method, the 12-month period following January 25, 2010 expired at the end of January 24, 2011; therefore, including January 25, 2011 creates a time period of twelve months and one day (Dkt 38 at 14). Plaintiff argues that as such, even by Defendant's own calculations, Plaintiff had FMLA time available to her when she requested leave to care for her daughter on January 25, 2011 (*id.*). Additionally, Plaintiff argues that even if it were somehow possible the 12-month period contained January 25 twice, Plaintiff would still have been entitled to leave on the day in question because Defendant failed to comply with the notice requirements of 29 C.F.R. § 825.300(d) with regard to both her 55-day maternity leave and her January 25, 2011 leave (*id.* at 11, 14).

Defendant's argument does not demonstrate that it is entitled to judgment as a matter of law. The applicable regulation provides that an employer is permitted to choose any one of the following methods for determining the "12-month period" in which the 12 weeks of leave entitlement occurs:

(1) The calendar year;

(2) Any fixed 12-month "leave year," such as a fiscal year, a year required by State law, or a year starting on an employee's "anniversary" date;

(3) The 12-month period measured forward from the date any employee's first FMLA leave under paragraph (a) begins; or,

(4) A "rolling" 12-month period measured backward from the date an employee uses any FMLA leave as described in paragraph (a).

29 C.F.R. § 825.200(b). Although the Sixth Circuit has apparently not yet discussed application of the rolling-calendar method of subsection (4), one district court has explained that "[a]s soon as an FMLA absence becomes more than 365 days old, which occurs on the one-year anniversary of the absence, it no longer counts toward the employee's total, so he or she essentially has those hours 'coming back' in the form of newly available leave time." *Gardner v. Great Lakes Cheese Co., Inc.*, No. 1:10 CV 183, 2011 WL 4537894, at *6 (N.D. Ohio Sept. 28, 2011). Under this method, on January 25, 2011, the one-year anniversary of Plaintiff's January 25, 2010 absence, the January 25, 2010 absence would no longer count toward Plaintiff's total available leave time.

Even if January 25, 2010 is properly included when measuring 12 months backward from January 25, 2011, Plaintiff has also raised factual questions about whether Defendant has properly calculated her FMLA leave balance where it did not comply with certain notice requirements in the Act. The FMLA requires employers to provide four types of notice to its employees: general notice, eligibility notice, rights and responsibilities notice, and designation notice. 29 C.F.R. § 825.300(a)-(d). Under the eligibility notice requirement, "when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). "The eligibility notice must state whether the employee is eligible for FMLA leave as defined in § 825.110(a). If the employee is not eligible for FMLA leave, the notice must state at least one reason why the employee is not eligible." 29 C.F.R. § 825.300(b)(2).

Similarly, the designation notice requirement requires an employer to designate leave as FMLA-qualifying and report this information to the employee. 29 C.F.R. § 825.300(d)(1). "When

the employer has enough information to determine whether the leave is being taken for a FMLA-qualifying reason (e.g., after receiving a certification), the employer must notify the employee whether the leave will be designated and will be counted as FMLA leave within five business days absent extenuating circumstances." 29 C.F.R. § 825.300(d)(1). "The designation notice must be in writing." 29 C.F.R. § 825.300(d)(4). Moreover, if there is a dispute between an employer and an employee as to whether leave qualifies as FMLA leave, such discussions and the decision "must be documented." 29 C.F.R. § 825.301(c). "Failure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e).

Here, Plaintiff asserts that although she made a specific request for leave under the FMLA for both her maternity leave and her leave on January 25, 2011, she was not provided with eligibility or designation notices, nor was she notified of Defendant's reason for denying her request for FMLA leave on January 25, 2011 or given an opportunity to dispute the decision (Dkt 38 at 11). In reply to Plaintiff's response, Defendant identifies a Health Care Provider Certification, an eligibility notice, and a Short Term Disability Benefits claim, but no designation notices or written documentation of a resolution of the disputed January 25, 2011 request for leave time (Dkt 45 at 7, citing Exs. A, B, & E). Therefore, the Court finds that even if January 25, 2010 is properly included when measuring 12 months backward from January 25, 2011, Plaintiff has also raised factual questions about whether Defendant has properly calculated her FMLA leave balance.

Second, Defendant argues that even if Plaintiff had FMLA leave available to her, she was not entitled to take FMLA leave on January 25, 2011 because her daughter did not suffer a "serious health condition" (Dkt 39 at 20-27). The FMLA defines a "serious health condition" as "an illness,

11

injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The governing regulation provides that "[a] serious health condition involving continuing treatment by a health care provider includes ... [a] period of incapacity of more than three consecutive, full calendar days and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (1) [t]reatment two or more times ... by a health care provider. . .; or (2) [t]reatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of a health care provider." 29 C.F.R. § 825.115(a).

Defendant argues that Plaintiff cannot satisfy the continuing treatment "definition" inasmuch as Plaintiff's daughter did not receive either inpatient care or continuing treatment for her flu (Dkt 39 at 22). Plaintiff responds that at ten months' old, the only daily activity that her daughter engaged in was attending day care, which she was unable to do for that three-day period (Dkt 38 at 16). Plaintiff properly points out that 29 C.F.R. § 825.113(d) provides that "[o]rdinarily, unless complications arise, the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches other than migraine, routine dental or orthodontia problems, periodontal disease, etc., are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave" (*id.* at 18). Plaintiff opines however, consistent with her daughter's treating nurse's testimony, that caring for an eighteen-pound infant with the flu may not be the "ordinary" situation contemplated by the regulation (*id.*).

As with Defendant's first argument, the evidence it proffers does not demonstrate it is entitled to judgment as a matter of law. The evidence of the nature of Plaintiff's young daughter's

12

illness is not so one-sided as to permit this Court to grant summary judgment in Defendant's favor. *See, e.g., Phillips v. Leroy-Somer N. Am.,* No. 01-1046-T, 2003 WL 1790936, at *6 (W.D. Tenn. Mar. 31, 2003) (finding material facts in dispute as to whether the plaintiff and/or her daughter had a serious health condition that was FMLA-qualifying); *Brannon v. OshKosh B'Gosh, Inc.*, 897 F. Supp. 1028, 1037 (M.D. Tenn. 1995) (deciding that the parents' testimony, coupled with the medical testimony that the three-year-old should have remained out of day care while she had a fever, was sufficient to prove that she was incapacitated for more than three consecutive calendar days). While Plaintiff may not ultimately be able to prove that she required leave to care for her daughter, a genuine issue of material fact remains for trial with respect to the question of whether Plaintiff's request was protected under the FMLA. *See Willard v. Ingram Constr. Co., Inc.*, 194 F.3d 1315, at *3 (6th Cir. 1999) (Order) (vacating the district court's summary judgment because genuine issues of material fact remain with respect to whether the plaintiff was entitled to leave under the FMLA).

In sum, neither of Defendant's arguments demonstrates that the evidence is so one-sided that it must prevail as a matter of law.

### III. CONCLUSION

For the foregoing reasons, the Court determines that Defendant's Motion for Summary Judgment (Dkt 37) is properly denied. An Order will be entered consistent with this Opinion.

DATED: December 20, 2012            /s/ Janet T. Neff
                                    JANET T. NEFF
                                    United States District Judge